UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

EAGLESUN SYSTEMS PRODUCTS, INC.,   )
  )
      Plaintiff,   )
  )
v.   )      Case No. 13-CV-0438-CVE-PJC
  )
ASSOCIATION OF VILLAGE   )
COUNCIL PRESIDENTS,   )
  )
      Defendant.   )

## OPINION AND ORDER

Now before the Court are the following motions: Defendant's Motion to Dismiss (Dkt. # 22), Plaintiff's Motion to Strike (Dkt. # 27), and Plaintiff's Motion for Jurisdictional Discovery (Dkt. # 36). Defendant Association of Village Council Presidents (AVCP) argues that it has sovereign immunity from suit because all of its members are federally-recognized Indian tribes and AVCP was created to provide governmental services for its members. Plaintiff Eaglesun Systems Products, Inc. responds that AVCP is a non-profit corporation organized under state law, and it is not entitled to sovereign immunity as an Indian tribe or as a tribal organization. Plaintiff also requests leave to conduct jurisdictional discovery before the Court rules on defendant's motion to dismiss.

## I.

AVCP is an Alaskan native regional corporation organized under Alaska law, and it is a non-profit corporation. Dkt. # 25-1, at 1. AVCP was incorporated following enaction of the Alaska Native Claims Settlement Act, 43 U.S.C. § 1601 et seq. (ANCSA), because it was necessary for Alaskan native villages or tribes to form a native regional corporation to receive certain benefits under ANCSA. See Rice v. Cayetano, 528 U.S. 495, 535 n.11 (2000). Each member of AVCP is a federally recognized Indian tribe. Like other corporations, AVCP has articles of incorporation,

a board of directors, and bylaws.  See Dkt. # 22-6; Dkt. # 25-1, at 1.  Myron P. Naneng, President of AVCP, states that its "corporate mission is to serve member tribes by providing social service, human development, and culturally-relevant programs that promote tribal self-determination and self-governance and works to protect tribal culture and traditions."  Dkt. # 22-1, at 2.  AVCP receives state and federal grants to administer social service programs, and Naneng states that all of AVCP's services "are provided to promote the welfare and preserve and protect the Native Alaskan culture of AVCP's member tribes."  Id. at 2-3.

Eaglesun states that it is a software company specializing in providing software to Indian tribes and affiliated entities for federally-funded social welfare programs.  Dkt. # 2, at 2.  In particular, Eaglesun developed a software program known as the Tribal Assistance System (TAS), and TAS is utilized by over fifty different Indian tribes and tribal social service providers.  Id. at 3. In 2000, Eaglesun and AVCP entered into a license agreement that allowed AVCP to use TAS for its Tribal Temporary Assistance for Needy Families (TTANF) program.  Id.  Eaglesun installed the software in Bethel, Alaska, and it also provided training to AVCP's employees in Tulsa, Oklahoma. Id.  The license agreement provided that Eaglesun owned the TAS software and that AVCP agreed to keep the software confidential from unauthorized users.  Id.  On May 15, 2003, Eaglesun obtained a copyright from the United States Copyright Office for TAS, and Eaglesun states that it is listed as the sole author of TAS.  Id.  Eaglesun claims that it included a notice of copyright on each copy of TAS licensed to AVCP.  Id.

In 2008, AVCP and Eaglesun executed a License Agreement and Services Agreement (the Agreement) that was intended to replace the original license agreement.  Id.  In the Agreement, Eaglesun granted AVCP a "nonexclusive, nontransferable, nonassignable license" to use TAS, and

the license "is solely for [AVCP's] own use for its internal data processing operations and solely on the computer system currently used or purchased by [AVCP]." Dkt. # 2-1, at 1. AVCP agreed that it would "not allow others to reverse engineer, disassemble, decompile, modify, or in any way tamper with the Licensed Software." Id. The Agreement also contains an arbitration provision:

> Arbitration: Between the parities [sic] all disputes arising out of or relating to this Agreement, or a material breach thereof, including disputes regarding arbitrability, will be submitted to binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . .

Id. at 4. The parties subsequently amended the Agreement to allow Eaglesun to bring suit against AVCP:

> [AVCP] further agrees that monetary damages would not be a sufficient remedy for an ongoing violation of the Confidentiality Provisions, nor would arbitration be an effective process for the prevention or relief thereof, and so [Eaglesun] shall be entitled to seek specific performance and injunctive or other equitable relief from a court of competent jurisdiction, and [AVCP] further agrees to waive any requirement of the securing or posting of any bond in connection with such action. Such remedy shall further not be deemed to be the exclusive remedy of [Eaglesun] but shall be in addition to all other remedies available under the provisions of this Agreement or at law or equity.

Id. at 8. The parties also agreed that the Agreement would be governed by Oklahoma law. Id.

Eaglesun alleges that AVCP hired Front Range Solutions USA, Inc. (Front Range) to write software to replace TAS, but that AVCP granted Front Range improper access to TAS. Eaglesun claims that Front Range's product was virtually identical to TAS and that AVCP employees immediately noticed the similarities between the two software programs. Dkt. # 2, at 6. Eaglesun filed this case alleging claims of copyright infringement, breach of contract, and misappropriation of trade secrets against AVCP, and Eaglesun seeks injunctive relief, monetary damages, punitive damages, and attorney fees from AVCP.

3

## II.

Sovereign immunity is a limitation on the Court's subject matter jurisdiction, and defendant's motion is considered a challenge to the Court's subject matter jurisdiction.  See Clymore v. United States, 415 F.3d 1113, 1118 n.6 (10th Cir. 2005).   When considering a motion to dismiss under Rule 12(b)(1), the Court must determine whether the defendant is facially attacking the complaint or challenging the jurisdictional facts alleged by the plaintiff.  In Holt v. United States, 46 F.3d 1000 (10th Cir. 1995), the Tenth Circuit stated:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms.  First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1002-03.  AVCP relies on evidence outside the pleadings and the Court will construe its motion as a factual attack on the jurisdictional facts alleged by plaintiff.  When ruling on a factual attack on subject matter jurisdiction, a court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" without converting the motion into a motion for summary judgment.  Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting Holt, 46 F.3d at 1003); see also Davis ex rel. Davis v. United States, 343 F.3d 1282, 1295-96 (10th Cir. 2003) (district court had authority to review evidence outside the pleadings without converting defendant's motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment).  To defeat the defendant's Rule 12(b)(1) motion, "plaintiff must present affidavits or other evidence sufficient to establish the court's subject

4

matter jurisdiction by a preponderance of the evidence." <u>Southway v. Central Bank of Nigeria</u>, 328 F.3d 1267, 1274 (10th Cir. 2003).

## III.

AVCP argues that it is entitled to sovereign immunity based on the immunity of its members or on AVCP's alleged status as a subordinate economic entity of federally-recognized Indian tribes. Eaglesun responds that AVCP is not a federally recognized Indian tribe but, instead, is a corporation created under state law, and AVCP has waived sovereign immunity from suit under the Agreement.

## A.

Eaglesun requests leave to conduct jurisdictional discovery before the Court rules on AVCP's motion to dismiss for lack of subject matter jurisdiction.  Dkt. # 36.  Eaglesun claims that it should be permitted to conduct discovery on six issues raised by AVCP's motion to dismiss and reply:

- AVCP's alleged profit-making activity

- AVCP's contention that its decision to incorporate under Alaska law was involuntary

- AVCP's claim that is operates as a governmental entity

- Discovery concerning AVCP's claim that it did not intend to waive sovereign immunity when it entered the Agreement

- Evidence concerning "how AVCP deals with sovereign immunity (or not) in its other contracts"

- Discovery to contest certain factual allegations contained in Naneng's second affidavit (Dkt. # 33-1)

Dkt. # 36, at 3-5.  Eaglesun claims that it will be necessary to take the deposition of Naneng and other employees of AVCP who engaged in contractual negotiations with Eaglesun, as well as other

5

persons with knowledge of AVCP's alleged governmental activities, and Eaglesun intends to conduct written discovery as well.  Id. at 6.

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by the motion."  Sizova v. Nat'l Institute of Standards & Technology, 282 F.3d 1320, 1326 (10th Cir. 2002).  However, a district court has discretion in the manner in which it resolves a motion to dismiss for lack of jurisdiction, and jurisdictional discovery is not required if no party will be prejudiced by the refusal to allow discovery.  Id.  "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of facts is necessary."  Id.  The party seeking jurisdictional discovery bears the burden to show that jurisdictional discovery is necessary.  Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort, 629 F.3d 1173, 1190 (10th Cir. 2010).

The Court has reviewed Eaglesun's motion for jurisdictional discovery and AVCP's motion to dismiss, and finds that jurisdictional discovery is unnecessary.  The discovery sought by Eaglesun would be expensive and time-consuming for the parties, but there is a low probability that the discovery would assist the Court in ruling on the jurisdictional issues.  See Bell Helicopter Textron, Inc. v. Heliquest Int'l, Ltd., 385 F.3d 1291, 1299 (10th Cir. 2004).  For example, Eaglesun challenges AVCP's assertion that it was required to incorporate under state law to receive certain federal benefits, but this fact has been recognized by the Supreme Court.  Rice, 528 U.S. at 535 n.11. It is also irrelevant whether Naneng subjectively believed that AVCP had sovereign immunity and did not intend to waive it, because these are legal conclusions for the Court to make based on the law and the parties' Agreement.  As to factual issues such as AVCP's profit-making activities and how it deals with sovereign immunity in other contracts, the Court does not find that these are

6

"pertinent facts bearing on the question of jurisdiction," and plaintiff will not be prejudiced if it is not able to conduct jurisdictional discovery on these issues.  Plaintiff's motion for jurisdictional discovery (Dkt. # 36) should be denied.

**B.**

Plaintiff asks the Court to strike any portion of Naneng's first affidavit (Dkt. # 22-1) concerning his subjective intentions when entering the Agreement or any amendment to the Agreement, because this would constitute parol evidence that is inadmissible under Oklahoma law. AVCP responds that the contractual language is ambiguous and Naneng's statement explains or clarify the ambiguous language.

Oklahoma courts follow the parol evidence rule and the Oklahoma Supreme Court has clearly stated that the parol evidence rule is a matter of Oklahoma substantive law, rather than a rule of evidence.  First Nat'l Bank in Durant v. Honey Creek Entertainment Corp., 54 P.3d 100, 104 (Okla. 2002).  "The parol evidence rule provides that unless fraud or mistake is involved pre-contract negotiations and oral discussions are merged into, and superseded by, the terms of the executed written agreement."  Mercury Inv. Co. v. F.W. Woolworth Co., 706 P.2d 523, 529 (Okla. 1985).  When the language of a contract is clear and unambiguous, evidence of one party's subjective intent when entering the contract is inadmissible.  First Nat'l Bank & Trust Co. of Norman, Oklahoma v. Security Nat'l Bank & Trust Co. of Norman, Oklahoma, 676 P.2d 837, 841 (Okla. 1984).

The Court has reviewed the disputed contractual language, particularly the "court of competent jurisdiction" provision, and finds that the Agreement is not ambiguous as a matter of law. Naneng's subjective beliefs that AVCP possessed sovereign immunity and that it did not intend to

waive sovereign immunity have no bearing on the Court's ruling.  The Court will determine as a matter of law whether AVCP has sovereign immunity and, if it did, whether AVCP waived its sovereign immunity, and Naneng's subjective beliefs about AVCP's sovereign immunity will have no effect on the decision.  However, the Court does not find that it would be helpful to strike select portions of Naneng's affidavit, because it is unclear from plaintiff's motion precisely what statements it seeks to strike.  Plaintiff's motion to strike should be denied, but the parties are advised that Naneng's statements concerning conclusions of law will not be considered.

## C.

AVCP claims that it should be treated as a federally recognized Indian tribe, because it was formed by Indian tribes for the purpose of carrying out governmental functions.  "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories."  Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509 (1991).   Although Indian tribes no longer "'possess[] the full attributes of sovereignty,' they remain a 'separate people, with the power of regulating their internal and social relations.'"  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55 (1978).  One of the key attributes of sovereignty that the tribes retain is immunity from suit.  Northern Arapaho Tribe v. Harnsberger, 697 F.3d 1272, 1281 (10th Cir. 2012).  Tribal immunity is similar to the immunity afforded to the states under the Eleventh Amendment, but tribal immunity is a matter of federal common law that is subject to congressional control and modification.  Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1154 (10th Cir. 2011).  Although tribal immunity is not co-extensive with a state's sovereign immunity, the Supreme Court has clearly established that a federally recognized Indian tribe has immunity from suit unless that immunity has been abrogated by Congress or the tribe has waived

8

its immunity.  Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 760 (1998).

AVCP argues that Alaskan native villages were organized into regional associations of Native Alaskan tribes, and various federal laws treat the regional associations as a tribe for certain purposes.  Under the ANCSA, the state of Alaska was divided into twelve regions, and the regions were intended to approximate the geographical areas covered by the existing operations of twelve regional associations, including AVCP.  43 U.S.C. § 1606.  There was a thirteenth region formed for the benefit of non-resident Alaska natives.  Id.  The regional associations were required to form regional corporations to receive certain benefits under ANCSA.  Id.  The corporations were organized under Alaska law and AVCP has a certificate of incorporation issued by the Alaska Department of Commerce and Economic Development.  Dkt. # 25-1, at 1.  Under ANCSA, title to land was transferred to the regional corporations and only Native Alaskans could be shareholders in the regional corporations.  Cook Inlet Region, Inc. v. Rude, 690 F.3d 1127, 1129 (9th Cir. 2012).  The federal government does not have any supervisory role over lands given to a regional corporation under ANCSA, and the lands are not considered "Indian County" under 18 U.S.C. § 1151.  Alaska v. Native Village of Venetie Tribal Government, 522 U.S. 520 (1998).  The clear congressional intent in enacting ANCSA was to revoke any existing reservation status in Alaska and to grant the regional corporations title to land to "make use of them as they wished for any purpose . . . ."  Hydro Resources, Inc. v. United States Environmental Protection Agency, 608 F.3d 1131, 1151 (10th Cir. 2010).  A leading treatise on federal Indian law states that ANCSA represented an "experimental model initially calculated to speed assimilation of Alaska Natives into corporate America."  Cohen's Handbook of Federal Indian Law § 4.07[3][b][ii][B] (2012); see also City of

Angoon v. Hodel, 803 F.2d 10161026 (9th Cir. 1986) (one of the goals of ANCSA was "to create

viable, profitable Native Corporations . . . ).   ANCSA has been described as a "legislative

compromise" between the federal government, the State of Alaska, and Alaskan Natives to

efficiently resolve the dispute over aboriginal title to land.  Leisnoi, Inc. v. Stratman, 154 F.3d 1062,

1064 (9th Cir. 1998).

AVCP argues that the regional corporations formed pursuant to ANCSA are included within

the definition of an Indian tribe in numerous federal statutes.  See 25 U.S.C. § 450b(e) ("'Indian

tribe' means any Indian tribe, band, nation, or other organized group or community, including any

Alaska Native village or regional or village corporation as defined in or established pursuant to

[ANSCA] . . ."); 25 U.S.C. § 1903(3) ("'Indian' means any person who is a member of an Indian

tribe, or who is an Alaskan Native and a member of a Regional Corporation . . .); 25 U.S.C. §

4001(2) ("The term 'Indian tribe' means any Indian tribe, band, nation, or other organized group or

community, including any Alaska Native village or regional or village corporation as defined in or

established pursuant to [ANCSA] . . .); 42 U.S.C. § 619(4)(B)(iv) ("The term 'Indian tribe' means,

with respect to the State of Alaska, only the . . . following Alaska Native regional nonprofit

corporations" including AVCP).  Even though Alaska Native corporations or regional associations

are recognized as tribes for limited purposes, no court has ever found that these corporations or

associations possess sovereign immunity from suit, because they do not possess key attributes of an

independent and self-governing Indian tribe.  Aleman v. Chugach Support Services, Inc., 485 F.3d

206, 213 (4th Cir. 2007) ("While the sovereign immunity of Indian tribes 'is a necessary corollary

to Indian sovereignty and self-governance' . . ., Alaska Native Corporations and their subsidiaries

are not comparable sovereign entities."); see also Seldovia Native Ass'n, Inc. v. Lujan, 904 F.2d

10

1335, 1350-51 (9th Cir. 1990) (Alaska Native Village corporations are not governing bodies and they do "not meet one of the basic criteria of an Indian tribe").

AVCP claims that Alaskan native tribal corporations are recognized as Indian tribes in various federal laws and that it can assert the defense of sovereign immunity as if it were an Indian tribe. The Bureau of Indian Affairs maintains a list of federally recognized tribes that "are acknowledged to have the immunities and privileges available to other federally acknowledged Indian Tribes by virtue of their government-to-government relationship with the United States . . . ." Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 75 Fed. Reg. 60810-01 (Oct. 1, 2010). As to Alaskan native entities, the individual tribes or vilages are separately listed as Indian tribes, and AVCP is not identified as an Indian tribe. Id. As stated in Cohen's Handbook of Federal Indian Law, it is the native villages that retain the power of self-government:

> Although regional and village corporations are included as "tribes" under some Indian legislation, many Natives are not shareholders in Native corporations, because stock was initially limited to Natives alive on December 18, 1971. Tribal governments, as opposed to regional and village corporations, are the only Native entities that possess inherent powers of self-government and that can develop autonomous membership rules. Internal self-government within a village by a state-authorized municipal government is not an effective alternative when control of the government becomes diluted by the growth of a non-Native constituency. The Native regional and village corporations are chartered under state law to perform proprietary, not governmental, functions.

Cohen's Handbook of Federal Indian Law § 4.07[3][d][i] (2012). AVCP has cited no authority that it is federally recognized Indian tribe that is entitled to sovereign as a matter of law. The Court will consider AVCP's other arguments concerning the sovereign immunity of tribal entities, but AVCP is not an Indian tribe that possesses sovereign immunity in its own right.

AVCP argues that it is an entity organized by federally recognized Indian tribes to perform governmental functions, and it can rely on the sovereign immunity of its members.  AVCP cites Dille v. Council of Energy Resources Tribes, 801 F.2d 373 (10th Cir. 1986), for the proposition that an organization or association formed by tribal entities for the purpose of performing governmental functions is entitled to sovereign immunity.  However, Dille is inapplicable to this case.  In Dille, the issue was whether the Council of Energy Resources Tribes (CERT) were excluded from the definition of employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII).  Id. at 374.  CERT was a council whose membership was limited to representatives of its tribal members, but it was not a corporation or entity organized under the law of any sovereign. Id.  The Tenth Circuit considered the specific statutory exemption under Title VII and found that CERT fell within the statutory exemption for Indian tribes.  The holding of Dille was limited to the specific statutory exemption under Title VII, and the Tenth Circuit noted that an entity's right to assert sovereign immunity depends "upon the purpose of the regulation or statutory provision under consideration."  Id. at 376.  In this case, AVCP is a corporation formed under Alaska law and the Court is not dealing with a specific statute or regulation as in Dille.  AVCP has cited no authority that any entity composed of tribal members that performs governmental or quasi-governmental services automatically possesses sovereign immunity, and the mere fact that AVCP provides services that could also be provided by a government does not give AVCP sovereign immunity from suit.

AVCP argues that it can assert sovereign immunity in its capacity as a subordinate economic entity of its member tribes, because AVCP shares in the sovereign immunity possessed by its member tribes. Dkt. # 22, at 9. Defendant responds that the subordinate economic entity test applies

12

only to entities organized under tribal law and, as a state law corporation, AVCP cannot rely on the sovereign immunity of its member tribes. Dkt. # 25, at 15.  Tribal sovereign immunity extends to subdivisions of a tribe and "even bars suits arising from a tribe's commercial activities."  Native American Distributing v. Seneca-Cayuga Tobacco Co., 546 F.3d 1288, 1292 (10th Cir. 2008).  To determine whether a subordinate tribal entity shares in a tribe's immunity, a district court must consider six factors:

> (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of sovereign immunity; . . . (5) the financial relationship between the tribe and the entities; . . . [and] (6) the policies underlying tribal sovereign immunity and its connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities.

Breakthrough Management Group, Inc. v. Chukachansi Gold Casino and Resort, 629 F.3d 1173, 1188 (10th Cir. 2010).  However, this test is inapplicable when a tribe or tribes form an entity under the law of a different sovereign, such as a state, and the entity in question must be organized under tribal law to qualify as a subordinate economic entity.  Somerlott v. Cherokee Nation Distributors, Inc., 686 F.3d 1144, 1149 (10th Cir. 2012).  The subordinate economic entity test is inapplicable to entities organized under state law, because such entities are under the authority of the state under which they are incorporated, not an Indian tribe.  Id. at 1149-50.

AVCP argues that it did not voluntarily decide to form a corporation under Alaska law, but that it was required to organize under Alaska law to receive benefits under ANCSA.  However, AVCP's characterization of its decision to incorporate under state law is misleading.  It is true that Alaskan Natives and Native villages were required to incorporate to receive certain benefits, but this does not mean the formation of the Native regional corporations was involuntary.  ANCSA represented a settlement between the federal government, the State of Alaska, and Alaskan Natives

concerning title to aboriginal land, and the Native villages agreed to form the regional corporations

as part of the settlement.  See Leisnoi, Inc., 154 F.3d at 1064;  Ariachak Native Community v.

United States Dep't of the Interior, 584 F. Supp. 2d 1 (D.D.C. 2008).  ANCSA contains the

following findings by the United States Congress:

> (a) there is an immediate need for a fair and just settlement of all claims by Natives
> and Native groups of Alaska, based on aboriginal land claims;
>
> (b) the settlement should be accomplished rapidly, with certainty, in conformity with
> the real economic and social needs of Natives, without litigation, with maximum
> participation by Natives in decisions affecting their rights and property, without
> establishing any permanent racially defined institutions, rights, privileges, or
> obligations, without creating a reservation system or lengthy wardship or trusteeship,
> and without adding to the categories of property and institutions enjoying special tax
> privileges or to the legislation establishing special relationships between the United
> States Government and the State of Alaska;

43 U.S.C. § 1601.  AVCP has cited no authority that Alaskan Native Villages or their members

involuntarily formed regional corporations under ANCSA, and case law and the Congressional

findings show that all parties entered ANCSA to resolve disputed land claims fairly, efficiently, and

without litigation.  There is no evidence that would suggest that AVCP involuntarily formed a

corporation under Alaska law, and AVCP is not entitled to claim sovereign immunity as a tribal

economic entity.

Even if the Court were to assume that AVCP had sovereign immunity, Eaglesun argues that

AVCP expressly waived its immunity from suit and sovereign immunity would not bar Eaglesun's

claims.  Eaglesun states that the original license agreement contains an arbitration provision, and

AVCP's agreement to submit to arbitration constitutes an unequivocal waiver of sovereign

immunity.  Tribal sovereign immunity can be abrogated by Congress or a tribe can waive its own

immunity from suit. Native American Distributing v. Seneca-Cayuga Tobacco, Co., 546 F.3d 1288,

1293 (10th Cir. 2008).   A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."  <u>Santa Clara Pueblo</u>, 436 U.S. at 58.  The arbitration provision in the original license agreement states that:

> Between the parities [sic] all disputes arising out of or relating to this Agreement, or a material breach thereof, including disputes regarding arbitrability, will be submitted to binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . and judgment upon the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof.

Dkt. # 2-1, at 4.  In <u>C & L Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe of Oklahoma</u>, 532 U.S. 411 (2001), the Supreme Court held that by agreeing to arbitration and enforcement of any arbitration award in court an Indian tribe waives its sovereign immunity against a lawsuit to enforce an arbitration award.  However, the parties in this case have not participated in arbitration pursuant to the original license agreement and this is not a case to enforce an arbitration award.  The Court finds that the arbitration provision does not constitute a waiver of sovereign immunity for all purposes but, instead, it waives sovereign immunity only as to lawsuits to enforce an arbitration award.  <u>See</u> <u>Swanda Bros., Inc. v. Chasco Constructors, Ltd., LLP</u>, 2013 WL 4520203 (W.D. Okla. Aug. 26, 2013).   The arbitration provision could allow either party to compel arbitration, if it is still in force, but plaintiff has not shown that the arbitration provision could be construed as a waiver of sovereign immunity as to any suit arising out of the Agreement.

Plaintiff argues that the parties subsequently amended the Agreement because they agreed that arbitration would not be an effective remedy, and AVCP agreed that plaintiff could seek equitable relief in a "court of competent jurisdiction."  The amendment states that:

> Licensee further agrees that monetary damages would not be a sufficient remedy for an ongoing violation of the Confidentiality Provisions, nor would arbitration be an effective process for the prevention or relief thereof, and so ESP shall be entitled to seek specific performance and injunctive or other equitable relief from a court of

competent jurisdiction, and the Licensee further agrees to waive any requirement of the securing or posting of any bond in connection with such action. Such remedy shall further not be deemed to be exclusive remedy of the ESP but shall be in addition to all other remedies available under the provisions of this Agreement or at law or equity.

Dkt. # 2-1, at 8.  The amendment also provides that "[t]he Agreement, and the rights, obligations, and duties of the parties arising from or relating in any way to the subject matter of this Agreement, whether arising in contract or tort, shall be governed, construed, and enforced in accordance with the laws of the State of Oklahoma without regard to choice of law principles."  <u>Id.</u>  AVCP argues that that the language "court of competent jurisdiction" is ambiguous and it does not clearly identify the court in which it consents to suit. Dkt. # 33, at 9.  In the context of a waiver of tribal sovereign immunity, "court of competent jurisdiction" can be ambiguous if it is unclear whether a tribe is waiving the right to be sued in tribal court or a state or federal court.  <u>See</u> <u>Santana v. Muscogee (Creek) Nation, ex rel. River Spirit Casino</u>, 508 Fed. Appx. 821 (10th Cir. Jan. 29, 2013).  In this case, AVCP is a corporation formed under state law and it has not argued or presented any evidence that it maintains a court system.  Thus, the phrase "court of competent jurisdiction" cannot refer to a tribal court, and it must refer to a state or federal court.  Construing the Agreement as a whole, the parties also agreed to a choice of law provision selecting Oklahoma law and this supports a finding that the parties intended for "court of competent jurisdiction" to mean a state or federal court in Oklahoma.  <u>C & L Enterprises</u>, 532 U.S. at 419 (considering the choice of law provision to determine the meaning of "court having jurisdiction").  Plaintiff seeks equitable and injunctive relief in this case  and its claims fall within the remedy provision of the Agreement.  Even if AVCP possessed sovereign immunity, it consented to suit for claims concerning breach of the

confidentiality provisions of the Agreement for equitable and injunctive relief, and this Court has jurisdiction over plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Dkt. # 22), Plaintiff's Motion to Strike (Dkt. # 27), and Plaintiff's Motion for Jurisdictional Discovery (Dkt. # 36) are **denied**.

**DATED** this 20th day of March, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

17